## STATE NAT. BANK et al. v. SCALES.

No. 5562. Opinion Filed May 9, 1916.

Rehearing Denied July 11, 1916.

Motion for Leave to File Second Petition for Rehearing Denied September 19, 1916.

(159 Pac. 925.)

**1. Witnesses—Husband and Wife—Proof of Agency—Evidence.**

An agency resting in parol can generally be proved by the testimony of either the principal or the person who claims to act as agent, and the same rule applies when the purported agent is either the husband or wife of the principal.

**2. Replevin—Proof—Variance.**

A variance between the petition and the proof is not fatal, where upon either the theory of the case set out in the petition or the proof offered in support thereof the plaintiff would be entitled to recover.

**3. Corporations — Stock—Pledges— "Certificate of Corporate Stock."**

A pre-existing indebtedness is not a sufficient consideration, as against the real owner, to support an unauthorized or wrongful pledge of a certificate of stock in a corporation, as such certificate is not a negotiable instrument, but stands upon the same footing as other personal property.

**4. Same — Wrongful Pledges — Right of Pledgee.**

Where shares of stock in a corporation have been wrongfully pledged to a bank, if, on the faith thereof, the bank permits the pledgor to overdraw his account, and such overdraft is thereafter paid by a deposit of the pledgor, the bank is not entitled to hold such stock as against the real owner.

(Syllabus by Rummons, C.)

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Lily W. Scales against the State National Bank, a corporation, and others. There was a judgment for plaintiff, and certain defendants bring error. Affirmed.

Wilson & Tomerlin, for plaintiffs in error.

Giddings & Dortch, for defendant in error.

Opinion by RUMMONS, C. The defendant in error, plaintiff below, commenced this action in the district court of Oklahoma county to recover a certificate representing 66 shares of the capital stock of the Oklahoma Portland Cement Company, of the value of $25 per share, of which plaintiff claimed to be the owner. The parties will be referred to herein as they appeared in the trial court. Plaintiff alleged that the stock sought to be recovered belonged to her, but for her convenience the stock was in the name of her husband, Henry M. Scales, who in all the transactions connected with this case acted as her agent; that in the year 1912 plaintiff, acting through her husband, caused said certificate of stock to be indorsed to one Herber P. Harter to be used as collateral in procuring a loan from the State Exchange Bank, of Oklahoma City, for the benefit of plaintiff; that said Harter, in violation of his trust, indorsed the said certificate of stock and delivered it to the defendant W. F. Wilson, as attorney and agent for the defendant State National Bank, but that said defendants Wilson and State National Bank paid no valuable consideration to the said Harter for the transfer of said certificate of stock; that the defendants Wilson and State National Bank knew at the time that they took said certificate of stock that neither the plaintiff nor her husband received any consideration whatever from the transfer thereof. The defendants State National Bank and Oklahoma Portland Cement Company answered, denying generally the allegations of the petition and specifically denying the allegation of the agency of Henry M. Scales for

the plaintiff. These answers were at the trial verified. At the trial the court sustained a demurrer to the evidence of the plaintiff as to the defendant W. F. Wilson, and he appears no further in this cause. The cause was tried to the court without the intervention of a jury, resulting in a judgment for plaintiff against the defendants State National Bank and Oklahoma Portland Cement Company for a return of said certificate of stock or its value in cash, if a return could not be had, which value the court found to be the sum of $1,485. The defendants State National Bank and Oklahoma Portland Cement Company bring this proceeding in error to reverse this judgment of the court.

The record discloses plaintiff was the owner of two bonds of the Louisville & Nashville Railroad Company which were paying a small rate of interest, and that, desiring to invest the money represented by said bonds more profitably, she caused the same to be sold, and caused her husband, who was a stockholder in the Oklahoma Portland Cement Company, to purchase the 66 shares of stock represented by the certificate in controversy herein; that for the convenience of plaintiff the certificate was taken in the name of her husband, Henry M. Scales, who acted as her agent in managing this stock. Some time in the year 1911 the plaintiff wished to borrow some money, and wished to use this certificate of stock as collateral for the loan. At that time Herber P. Harter, who occupied the same office with her husband, was doing business with the State Exchange Bank, of Oklahoma City, and advised the husband of plaintiff that he could procure the loan from said bank. On April 1, 1911, Henry M. Scales indorsed the certificate of stock to Herber P. Harter, and delivered the same to him to deposit as collateral for the loan desired to be procured by plaintiff. The president of the State Exchange Bank was at this time absent from the city, and the loan was not effected. Henry M. Scales testified that Harter returned him the stock as soon as he learned that the president of the State Exchange Bank was absent, and that he (Scales) placed the same in his drawer in a safe in the office, which safe was used jointly by Scales and Harter, but in which each had a separate box or compartment for his private papers. On May 19, 1911, Harter indorsed this certificate in blank and delivered the same to the Oklahoma City National Bank as collateral. He was at that time indebted to the Oklahoma City National Bank in the sum of about $9,000. for which said bank held various items of collateral. Shortly thereafter the State National Bank purchased the assets of the Oklahoma City National Bank and took over its business, and thus acquired the collateral and the indebtedness of Harter. Henry M. Scales testified that he first learned where this certificate of stock was some time in the year 1912, being notified by an attorney of the Oklahoma Portland Cement Company that this certificate of stock had been sent to the company for transfer upon its books. It does not appear from the evidence that at the time Harter pledged this stock he received any money therefor, nor was the time of payment of his indebtedness to the bank extended. At the time of his pledge of this stock his account with the bank was overdrawn $994.38. This overdraft was liquidated on May 25, 1911, by deposit of $1,400. Thereafter, on June 5, 1911, Harter created an overdraft which subsequently, in July, amounted to $1,033. On August 9, 1911, this was liquidated by deposit of $1,033. On August 9th another overdraft was created of $8.90, which was liquidated on August 11th by deposit of a like amount. On July 22, 1911, the State National Bank, by its attorney, posted notice of sale of pledged chattels in which it advertised the sale of this certificate of stock, together with other certificates of stock, to satisfy all indebtedness of Herber P. Harter, represented by four notes and an overdraft. The notes and overdraft were described as follows: One note dated April 15, 1911, due May 14, 1911, for $1,000, upon which there was due, including interest and attorney's fees, $1,127.32; one note in the sum of $2,500, dated April 13, 1911, due 60 days after date, upon which there was due, including interest and attorney's fees, $2,783; one note for the sum of $4,000, dated April 21, 1911, due June 20, 1911, upon which there was due, including interest and attorney's fees, $4,436.66; one note for the sum of $500, dated May 3, 1911, due 30 days after date, upon which there was due, including interest and attorney's fees, $578.32; also an overdraft in the sum of $1,038.50. The collateral was not sold under this notice. Harter came in and paid something on the debt, and on three or four different occasions paid something on the indebtedness until it was reduced to about $5,000. On September 4, 1912, another notice of sale of the pledged collateral was posted by the State National Bank advertising for sale this certificate of stock, and two others. one for 53 shares and one for 86 shares of the capital stock of the Oklahoma Portland Cement Company to satisfy the indebtedness of Herber P. Harter, consisting of three promissory notes: One for $5,000, dated November 27, 1911, due December 20, 1911; one for $825. dated and maturing as above; another for $264.41, bearing the same date

and maturing at the same time—aggregating, including interest and attorney's fees, the sum of $6,515.97. Under this notice this certificate of stock was sold on October 1, 1912, together with the other collateral for the sum of $100 to Rebecca Lynn. She was a clerk in the employ of the attorney for the State National Bank, and later transferred this certificate of stock to said bank.

Counsel for defendants make three assignments of error: First, error in permitting Henry M. Scales, the husband of plaintiff, to testify to the transaction by which the plaintiff, Lily W. Scales, claimed to have purchased the shares of stock in the Oklahoma Portland Cement Company; second, that there was a variance between the allegations of the plaintiff's petition and the proof offered in support thereof in this, that the plaintiff alleged the stock in controversy had been hypothecated with the bank in violation of a trust imposed in Harter to hypothecate the same to the State Exchange Bank to secure a loan for plaintiff, while the evidence disclosed that the stock came into the hands of Harter at the time it was hypothecated with the Oklahoma City National Bank by a larceny from the private drawer of the husband of plaintiff; third, the court erred in holding plaintiff was entitled to recover possession of said stock or its value. there being no sufficient competent evidence to support such judgment of the court.

We have carefully examined the testimony of the plaintiff and her husband, Henry M. Scales, as to the transaction by which Mrs. Scales claimed to become the owner of this certificate of stock, and we find no prejudicial error in the admission of such testimony. It has been held by this court that agency resting in parol can generallly be proved by the testimony of either the principal or the person who claims to be the agent, and the foregoing rule is not changed when the purported agent is either the husband or wife of the principal. Armstrong, Byrd & Co. v. Crump, 25 Okla. 452, 106 Pac. 855; Lowman v. Blaine County Bank, 40 Okla. 519, 139 Pac. 952. The court therefore did not err in admitting the testimony of plaintiff and her husband that he was acting as her agent in the transaction. As her agent in the purchase and management of these shares of stock, he was a competent witness to testify as to what he did in buying said stock and in disposing of it.

In the view we take of the principal question in this case. we do not think that the question of variance raised by the second assignment of error is material to a determination thereof; for, unless the bank gave a consideration for the transfer of this stock to it as collateral, it could not be injured by the variance complained of; for, unless plaintiff might be estopped from reclaiming her property, it was immaterial whether the pledging of the stock was wrongful or criminal.

We come then to the principal question involved in this cause, whether or not the defendant State National Bank, or its predecessor in interest, the Oklahoma City National Bank, was a bona fide pledgee of this certificate of stock for value. The plaintiff having established her ownership of this certificate of stock, and there is in the record no attempt on the part of the defendants to dispute her ownership, she could only be deprived of her ownership therein by the tortious or criminal act of another because of an estoppel, and the burden was upon the defendants to show such estoppel. The principal element of estoppel by conduct is that the party claiming the estoppel has been led by such conduct to act to his prejudice. However negligent plaintiff and her husband may have been in this matter, unless the defendant bank or its predecessor parted with something of value or acted to its prejudice in consideration of the pledge of this stock, they cannot hold it against the rightful owner. Wails v. Farrington, 27 Okla. 754, 116 Pac. 428, 35 L. R. A. (N. S.) 1174; First Nat. Bank v. Strauss, 66 Miss. 479, 6 South. 232, 14 Am. St. Rep. 579; Goodwin v. Mass. Loan, etc., Co., 152 Mass. 189, 25 N. E. 100.

A certificate of stock, while transferable by indorsement and delivery, is not invested with the sanctity of commercial paper, and stands upon the same footing as any other personal property. Weaver v. Barden, 49 N. Y. 286; Cook on Stock and Stockholders' (3d Ed.) sec. 412.

The defendants in this case have not shown upon what consideration this certificate of stock was received from Harter, except that it was to be collateral to whatever indebtedness he might then or thereafter owe the bank. The cashier of the pledgee bank testified that "he must have received some money." but no evidence was offered to show that he received any amount of money. There is no evidence in the record to show that at the time this stock was pledged any extension in the date of maturity of the indebtedness of Harter was agreed upon. In fact, the contrary seems to appear from the evidence; for in July thereafter notice was given of a sale of this and other collateral to satisfy the indebtedness of Harter, all of which, except the overdraft, antedated the pledging of this stock; and the time of payment of none.

of this indebtedness seems to have been extended. The testimony of the attorney for the defendant bank is that the sale was not made because Harter made a payment upon his indebtedness, and thereafter made several other payments, and that the indebtedness was thereafter extended from time to time; but nowhere does the record disclose that any such extensions were in consideration of the pledging of this certificate of stock, or that there was any other consideration for such extension than the periodical payments upon the indebtedness made by Harter. Fenouille v. Hamilton, 35 Ala. 319.

But defendants in their brief only argue that they gave a valuable consideration for the pledge of this stock, for the reason that thereafter Harter was permitted to overdraw his account in the bank in the sum of $1,033. This overdraft and the small overdraft of $8.90, which was also repaid, were the only indebtedness incurred by him after this stock was pledged. There is no evidence in the record that at the time this collateral was pledged the bank agreed to permit any overdraft, or that this overdraft arose in any different manner than the overdraft which stood upon the books of the bank against Harter at the time this stock was pledged. But this overdraft cannot avail the defendants as a consideration for the transfer of this stock, for the reason that the record discloses that the same was paid by deposit in full about 60 days after the same first began to be permitted. The bank, having been repaid the consideration which it claims to have parted with for this stock, cannot claim to hold the same as an innocent purchaser for value against the real owner thereof, because, having been repaid, it has suffered no injury, and the principal element of estoppel upon which it must rely fails.

We therefore conclude that the defendants have failed to show any valuable consideration for the transfer to it, by way of pledge, of the certificate of stock here in controversy, and that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.